UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VANESSA GONZALEZ,  ) No. CV 10-1808 PJW
        Plaintiff,  )
        v.  ) MEMORANDUM OPINION AND ORDER
MICHAEL J. ASTRUE,  )
Commissioner of the  )
Social Security Administration,  )
        Defendant.  )

## I. INTRODUCTION

Plaintiff Vanessa Gonzalez appeals a decision by Defendant Social Security Administration ("the Agency"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when she determined that Plaintiff could perform light work and was not credible. (Joint Stip. at 3-6, 18-19.) For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings consistent with this decision.

## II. SUMMARY OF PROCEEDINGS

In December 2006, Plaintiff applied for SSI and DIB, alleging that she had been disabled since October 31, 2006, due to pain,

fatigue, and weakness from injuries sustained when she was hit by a tow truck. (Administrative Record ("AR") 5, 86-92.) The Agency denied her application initially and on reconsideration. (AR 51-54, 61-65.) She then requested and was granted a hearing before an ALJ. (AR 67-85.) On September 15, 2008, Plaintiff appeared with counsel at the hearing. (AR 30.) Plaintiff requested a closed period of disability because she planned to return to work on a part-time basis. (AR 32.) The ALJ denied this request. (AR 5.) Plaintiff and a vocational expert testified at the hearing. (AR 35-40.) On December 31, 2008, the ALJ issued a decision denying benefits. (AR 5-13.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-3, 14-17.) She then commenced the instant action.

## III. ANALYSIS

### A. The ALJ's Residual Functional Capacity Determination

The ALJ determined that Plaintiff had the residual functional capacity to perform light work, with certain limitations.[1] (AR 9.) Plaintiff claims that the ALJ erred in finding that she could perform light work. She argues that the ALJ failed to take into account one of her treating physician's opinions and improperly discounted another in order to achieve this end. (Joint Stip. at 3-6.) For the following reasons, the Court agrees and remands the issue for further consideration.

#### 1. Dr. Roth's Opinion

---

[1] The ALJ determined that Plaintiff could only occasionally use her "dominant upper left and lower left extremities for pushing and pulling, occasional climbing, stooping, kneeling, crouching, and crawling, and the claimant is precluded from working at heights or near hazardous machinery because of her history of closed head injury with one grand mal seizure and mild residual weakness in the left upper and left lower extremities." (AR 9.)

2

According to the ALJ, Plaintiff is capable of performing light work. (AR 9.) Light work is defined in the regulations as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 CFR §§ 404.1567(b), 416.967(b).

The ALJ's finding that Plaintiff could perform this type of work is inconsistent with the opinion of Plaintiff's treating doctor, Bradley Roth, who concluded that Plaintiff was not capable of performing light work. (AR 462-65.) The ALJ did not mention Dr. Roth's opinion in reaching her decision, however. For the reasons explained below, the Court concludes that this was error.

"By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (explaining that treating physician's opinion "is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual'" (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987))). For this reason, a treating physician's opinion that is well-supported and not inconsistent with other substantial evidence in the record will be given controlling weight. *Orn*, 495 F.3d at 631; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). An ALJ may not reject the opinion of a

treating physician that is contradicted by another physician "without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)(quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Nor can an ALJ avoid this requirement by simply ignoring the treating physician's opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) ("Of course, an ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it.").

Here, the ALJ's decision denying benefits completely ignored Dr. Roth's opinion. This was error. *See, e.g.*, *Lingenfelter*, 504 F.3d at 1038 n.10; *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). The Agency argues that the error was harmless because: (1) Dr. Roth did not provide ongoing care or perform objective testing of Plaintiff's functional limitations; (2) Dr. Roth referred Plaintiff to a neurologist for evaluation; (3) Dr. Roth's opinion was conclusory and entitled to little weight; and (4) Dr. Roth's opinion would only have established limitations through July 2007 and not the statutorily required twelve-month period. (Joint Stip. at 13-15.) The Court disagrees.

To begin with, the harmless error standard proposed by the Agency is not the proper standard. Where, as here, the ALJ has not provided any reason for rejecting the treating doctor's opinion, her decision cannot be affirmed unless the Court "can confidently conclude that no reasonable ALJ, *when fully crediting [the evidence]*, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006) (defining harmless error in social security context) (emphasis added); *see also Carmickle v. Comm'r*, 533

4

F.3d 1155, 1162-63 (9th Cir. 2008) (explaining that, under *Stout*, where ALJ provides no reason for rejecting evidence at issue, reviewing court must consider whether ALJ would have made different decision if he relied on the rejected evidence). Thus, the Court cannot adopt the Agency's post hoc justification for rejecting Dr. Roth's opinion, determine that it is entitled to no weight, and then uphold the ALJ's decision on that basis, as the Agency proposes. *See, e.g., Wallace v. Apfel*, No. 00-0376, 2001 WL 253222, at *4 (N.D. Cal. Mar. 2, 2001) (rejecting [Agency's] reasons justifying ALJ's failure to discuss treating physician's opinion because ALJ did not rely on them). Rather, the Court must start with the proposition that Dr. Roth's opinion is valid and determine whether, accepting it at face value, no ALJ would conclude that Plaintiff was disabled. Applying this standard, the Court must conclude that an ALJ accepting the fact that Plaintiff was unable to perform even sedentary work would not conclude that she could perform light work.

Further, even if the Agency's proposed standard governed, the Court would still conclude that the error was not harmless. Dr. Roth was one of Plaintiff's treating physicians. As such, his opinion regarding Plaintiff's limitations was entitled to great weight, absent special circumstances. Dr. Roth was Plaintiff's surgeon and likely knew as much about her condition and prognosis as any doctor in this case. The fact that Dr. Roth referred Plaintiff to a neurologist does not diminish the importance of his experience as her treating doctor. The fact that his opinion was confined to a form is not controlling, either. If the ALJ wanted or needed more support, she could have asked for it. Finally, the Agency's argument that Dr. Roth's opinion was defective because it did not include an allegation that

5

Plaintiff's limitation would last for at least 12 months is simply contrary to the evidence in the record. Dr. Roth indicated on the form that he completed that "Plaintiff's impairments lasted or can [] be expected to last at least twelve months." (AR 462.)

In addition to all these reasons, the Court also notes that Dr. Roth's opinion was corroborated by Plaintiff's other treating physician, Dr. Fernandez. (AR 511-14.) This lends further support to both opinions. *See Lester*, 81 F.3d at 832 (noting that "the similarity of [the two treating physicians'] conclusions provides reason to credit the opinions of both.")

The vocational expert testified that an individual with the limitations assessed by Dr. Roth could not perform any work. (AR 38.) As such, Dr. Roth's opinion, if credited, would necessitate a finding of disabled. Thus, the ALJ's failure to address Dr. Roth's opinion is not harmless and remand on this issue is required.

        2.   <u>Dr. Fernandez's Opinion</u>

Plaintiff also contends that the ALJ erred by rejecting the opinion of Plaintiff's other treating physician, Eric Fernandez. (Joint Stip. at 4-5.) Again, the Court agrees.

On July 30, 2007, Dr. Fernandez completed a Physical Residual Functional Capacity Questionnaire in which he noted Plaintiff's chronic pain and fatigue and opined that Plaintiff was capable of performing less than sedentary work. (AR 511-14.) Dr. Fernandez also indicated that Plaintiff's impairments would cause her to be absent from work more than three times a month. (AR 512.)

Because Dr. Fernandez was a treating physician, his opinion was also entitled to special weight. *Embrey*, 849 F.2d at 421. The ALJ was empowered to discount it, but was required to provide specific and

legitimate reasons supported by substantial evidence in the record for doing so. *Lester*, 81 F.3d at 830 (quoting *Murray*, 722 F.2d at 502).

The ALJ rejected Dr. Fernandez's opinion because: (1) it was not accompanied by documents lending support for its "extreme limitations"; (2) it merely reiterated Plaintiff's subjective allegations; (3) it was inconsistent with July 2007 X-rays, which showed normal cervical and thoracic spine and normal bilateral shoulders; (4) there was no evidence in the record supporting Dr. Fernandez's extreme limitations and restrictions; and (5) Dr. Fernandez's assessment was not "compatible with the record as a whole." (AR 10-11.) The Court addresses each one in turn.

That Dr. Fernandez's opinion was not accompanied by supporting documents is a specific and legitimate reason for rejecting it. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Further, this reason was supported by substantial evidence. Dr. Fernandez's opinion was contained in a four-page form, which included minimal information about clinical findings and no mention of objective medical testing. (AR 511-14.) While the record includes Dr. Fernandez's treatment notes and the results of diagnostic tests that he ordered, neither provide specific, objective support for his assessment of Plaintiff's functional limitations. *See Tonapetyan*, 242 F.3d at 1149 (rejecting treating physician's opinion because it was "conclusory and brief and unsupported by clinical findings"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may reject "check-off reports that [do] not contain any explanation of the bases of their conclusions.").

The ALJ also rejected Dr. Fernandez's opinion because it was

based in part on Plaintiff's subjective claims of pain and limitations, which the ALJ found were not credible. This is a legitimate reason to discount a claimant's testimony. *See, e.g., Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). As explained below, however, the Court has questions about the ALJ's credibility finding and is remanding the case on that issue, too. Thus, it cannot agree at this time that this was a legitimate reason for rejecting Dr. Fernandez's opinion.

The ALJ also relied on the fact that Plaintiff's claims were inconsistent with the medical records. This is a legitimate reason to reject an opinion. *Valentine v. Comm'r*, 574 F.3d 685, 692-93 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Whether the record supports this reason is a closer question. The ALJ points only to Plaintiff's July 2007 X-rays. While they show that Plaintiff's spine and shoulders are normal, it is not obvious to the Court that normal X-rays are inconsistent with pain, weakness, and fatigue. Nor does the ALJ explain the basis of her conclusion that they are. However, because this evidence is susceptible to more than one rational interpretation, the Court upholds the ALJ's conclusion in this regard. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ also rejected Dr. Fernandez's opinion because there was no objective evidence in the record to support it. This, too, can be a valid reason for rejecting a doctor's opinion. *Valentine*, 574 F.3d at 692-93; *Tomasetti v. Astrue*, 533 F.3d 1035, 1040-41 (9th Cir. 2008). Moreover, the Court finds that, on balance, this reason was supported by substantial evidence. X-rays and an MRI taken in 2007 revealed no significant abnormalities. (AR 441-42, 477, 532-33.) Plaintiff's medical records from Dr. Fernandez's office noted

Plaintiff's clinical improvement and gradually diminishing reliance on pain medication. (AR 435-40, 443-45, 515-29.) Consultative examiner Barry Gordon Gwartz opined in September 2007 that Plaintiff had fewer functional limitations than Dr. Fernandez had identified. (AR 475.) Similarly, the October 2007 report of non-examining consultant Leonard Schwartz concluded that Plaintiff retained the capability for light work. (AR 481-85, 497-98.) Moreover, because Dr. Gwartz's opinion was based on independent clinical findings, his opinion may itself constitute substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Thus, here, again, the evidence is subject to more than one rational interpretation. As such, the Court will not substitute its judgment for that of the ALJ. *Burch*, 400 F.3d at 679.

The ALJ's fifth reason—-that Dr. Fernandez's opinion was not "compatible with the record as a whole"—-is not specific or legitimate. "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity" required. *Embrey*, 849 F.2d at 421. An ALJ must do more than offer her conclusion, which is all that she did here. As such, this is not a legitimate reason to discredit Dr. Fernandez's opinion. *See id.* at 421-22 (noting ALJ was required to provide his own interpretation of the medical evidence and explain why it was more correct than the treating physician's); *McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989) (finding ALJ's conclusion that treating physician's report was "entirely contrary to the clinical findings in the record" was too "broad and vague" a basis for discrediting opinion).

Of the five reasons the ALJ relied on for rejecting Dr.

Fernandez's opinion, the Court finds that three are valid and supported by the evidence and two are not. Because the Court is unable to determine whether the ALJ would have discredited Dr. Fernandez's opinion based solely on the three remaining reasons, the Court remands the issue for the ALJ to make that determination in the first instance. This will also give the ALJ the opportunity to consider the impact, if any, of Dr. Roth's opinion on Dr. Fernandez's opinion, if she elects to accept it.

### 3. The ALJ's Failure to Address The Consulting Doctor's Limitations

Plaintiff contends that the ALJ also erred by failing to address all of the limitations found by examining consultant Barry Gordon Gwartz. (Joint Stip. at 6.) For the reasons explained below, the Court agrees.

In order to reject the opinion of an examining doctor, the ALJ must give "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31; *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); Social Security Ruling 96-6p ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

On September 26, 2007, consultative examiner Barry Gordon Gwartz reviewed Plaintiff's medical records, performed a physical and neurological evaluation, and ordered diagnostic tests. (AR. 471-79.) Based on this examination, Dr. Gwartz found:

[T]he claimant appears capable of lifting and/or carrying 20

pounds occasionally and 10 pounds frequently. The claimant
appears capable of standing and/or walking 6 hours in an 8-
hour workday, *but only at her own pace and provided that she
can sit as needed for dizziness or fatigue*. The claimant is
able to sit 6 hours out of 8-hour workday alternating sitting
and standing every 2 hours to stretch 5-10 minutes for back
pain or stiffness. She is able to occasionally use her left
upper and left lower extremity for push and pull maneuvers
with no limitations in the right upper and right lower
extremity. She is able to occasionally crouch, kneel, stoop,
and climb. There are no manipulative limitations. She should
be precluded from working at heights or near hazardous
machinery because of her history of a closed head injury with
one grand mal seizure and mild residual weakness in the left
upper and left lower extremities.

(AR 475 (emphasis added).)

The ALJ relied, in part, on Dr. Gwartz's opinion in determining Plaintiff's capabilities but failed to include Dr. Gwartz's qualification that Plaintiff could walk and stand up to six hours in an eight-hour day "only at her own pace and provided she can sit as needed for dizziness or fatigue." (AR 10, 475.) Because the ALJ did not include this limitation, the Court assumes that she rejected it. The ALJ failed, however, to provide specific and legitimate reasons for doing so and this constitutes error. Moreover, this error was material to the ALJ's determination that Plaintiff retained the ability to perform light work. In response to questioning by Plaintiff's attorney, the vocational expert testified that Plaintiff would not be able to perform the work of an office nurse or medical

assistant if she needed to walk at her own pace and sit as needed for dizziness and fatigue. (AR 37-38.) As such, this issue is remanded so that the ALJ can provide specific and legitimate reasons for rejecting Dr. Gwartz's limitations or incorporate them into the residual functional capacity determination. *See, e.g. Embrey*, 849 F.2d at 422 ("Hypothetical questions posed to the vocational expert must set out *all* the [claimant's] limitations and restrictions."); *Andrews*, 53 F.3d at 1043-44 (remanding case because ALJ's hypothetical to vocational expert did not include functional limitations found by examining physician).

B. <u>The ALJ's Credibility Determination</u>

In her final claim of error, Plaintiff contends that the ALJ erred by finding her not credible. (Joint Stip. at 18-19.) For the following reasons, the Court agrees.

ALJs are tasked with judging the credibility of witnesses. Where, as here, a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged, the ALJ "may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester*, 81 F.3d at 834; *Fair*, 885 F.2d at 601-03. If there is no evidence of malingering, the ALJ may only reject the claimant's testimony for "specific, clear, and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). These reasons must be supported by substantial evidence in the record. *Thomas*, 278 F.3d at 959. In evaluating a claimant's credibility, an ALJ is free to consider many factors, including "ordinary techniques of credibility evaluation[,]. . . prior inconsistent statements . . . unexplained or inadequately explained failure to seek treatment or to

follow a prescribed course of treatment, . . . and the claimant's daily activities." *Smolen*, 80 F.3d at 1284. "General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Plaintiff testified that she experienced pain, fatigue, and weakness that prevented her from working before the summer of 2008. (AR 33-34.) The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not credible because they were "inconsistent with the medical evidence, which shows that [Plaintiff's] health and residual functional capacity had substantially improved [] within twelve months of the motor vehicle [accident] in October 2006 (Exhibits 1F through 14F)." (AR 10.) This does not constitute a clear and convincing reason for rejecting her testimony.

While a lack of medical evidence corroborating the alleged severity of symptoms is a factor that the ALJ may consider in assessing a claimant's credibility, "it cannot form the sole basis for discounting pain testimony." *Burch*, 400 F.3d at 681; see also *Thomas*, 278 F.3d at 959 (noting that ALJ may not reject claimant's testimony "solely because the objective medical evidence does not support the severity of her impairment"); *Tonapetyan*, 242 F.3d at 1147-48 ("ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by the objective evidence" "because the claimant's subjective statements may tell of greater limitations than can medical evidence alone.").

Moreover, even if this were a legitimate basis for the ALJ's

adverse credibility determination, the ALJ's blanket statement was insufficiently specific to support such a finding. *See, e.g.*, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883-85 (9th Cir. 2006) (ALJ's conclusion that claimant's testimony "was 'not consistent with or supported by the overall medical evidence of record'" did not constitute a "meaningful explanation" for the court to assess); *Embrey*, 849 F.2d at 423 (ALJ's finding that the "'totality of the evidence of record does not substantiate the claimant's allegations'" "does not achieve the level of specificity" required to disregard claimant's excess pain testimony); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (ALJ must provide a "specific, cogent reason" for disbelieving claimant). Because the ALJ gave no other reasons for discrediting Plaintiff's allegations, the Court cannot uphold her adverse credibility determination. As such, the issue is remanded for further consideration of Plaintiff's credibility.[2]

---

[2] The Agency's reliance on *Carmickle v. Commissioner*, 533 F.3d 1155 (9th Cir. 2007) and *Batson v. Commissioner*, 359 F.3d 1190 (9th Cir. 2004), to support the ALJ's determination is misplaced. (Joint Stip. at 20.) In both cases the ALJ gave several reasons for discrediting the claimant, only one of which was a lack of supportive medical evidence. *Carmickle*, 533 F.3d at 1161-62; *Batson*, 359 F.3d at 1196-97.

IV.  CONCLUSION

For the reasons set forth above, the Court concludes that the Agency's decision denying benefits is not supported by substantial evidence. The decision is, therefore, reversed and the case is remanded for further consideration in light of the Court's decision.[3]

IT IS SO ORDERED.

Dated: July 5, 2011

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\GONZALEZ, V 1808\Memo_Opinion.wpd

---

[3] Plaintiff has requested that the Court reverse the Agency's decision and remand the case for an award of benefits. (Joint Stip. at 23.) The Court recognizes that it has the authority to grant such relief but finds that the issues outlined above require further development before it will be clear whether Plaintiff is entitled to benefits. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998) (noting that the decision whether to remand or simply award benefits is within discretion of court).